IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
8/17/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

| | | |
|---|---|---|
| SHAWN JADRNICEK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:26-cv-00063 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DANNY PEEK, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Shortly after going public with allegations of illegal activities against a partner organization of his employer, Plaintiff Shawn Jadrnicek ("Jadrnicek") was fired from his position as Extension Agent of the Virginia Cooperative Extension, a division of the Virginia Polytechnic Institute and State University ("Virginia Tech"). Jadrnicek now brings claims under 42 U.S.C. § 1983 and the Virginia Fraud and Abuse Whistle Blower Protection Act ("VFAWPA") against his supervisor, Defendant Danny Peek ("Peek"), alleging that he retaliated against him for his speech in violation of the First Amendment and Virginia law. Peek has moved to dismiss both claims and to strike the damages sought by Jadrnicek. For the reasons discussed below, the court will grant both motions in part and deny them in part.

## I. Statement of Facts and Procedural Background

The following facts are recited as Jadrnicek alleges them in his amended complaint, and, at this stage, the court accepts the allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

From September 2021 until his termination in July 2025, Jadrnicek was employed by the Virginia Cooperative Extension, a division of Virginia Tech, as an Extension Agent for

Agriculture and Natural Resources. (Am. Compl. ¶¶ 18–19 [ECF No. 11].) As part of his job duties, Jadrnicek conducted analyses of the profitability of southwest Virginia's farmers markets and community-supported agriculture marketplace with the goal of increasing farm profitability for local farmers. (*Id.* ¶¶ 23–24.) He also received training from the Commonwealth of Virginia regarding pertinent regulations and the legal responsibilities of his employment. (*Id.* ¶ 20.)

In 2025, while performing an analysis on profitability, Jadrnicek "uncovered evidence of false advertising regarding the Local Environmental Agriculture Project" ("LEAP"), which is a Roanoke-based 501(c)(3) non-profit. (*Id.* ¶ 26.) Jadrnicek alleges that although LEAP published marketing materials and held itself out as a seller of "farm shares," his investigation led him to believe that LEAP was not, in fact, selling "farm shares" and was engaging in "fraud on a large scale." (*Id.* ¶ 27.) In particular, Jadrnicek explains that he found that LEAP sold products from "food aggregators and food hubs" and not actual "farm shares," that this discrepancy "resulted in false advertising by LEAP and Virginia Tech[,]" and that sales of the purported "farm shares" "resulted in fraudulent sales and unjust enrichment." (*Id.*) He also contends that "a LEAP board member paid himself over six figures worth of taxpayer funds illegally . . . in an illegal scheme of self-dealing." (*Id.* ¶ 28.) Finally, Jadrnicek alleges that LEAP operates as a "for-profit enterprise despite its organization as a non-profit business[,]" competing with for-profit grocery stores and farms and "avoid[ing] taxation illegally by funneling revenue to LEAP and board members of LEAP." (*Id.* ¶ 29.)

In addition to reporting these discoveries to his supervisor and management, Jadrnicek also reported them during a Farm Profitability Workshop that was shared publicly on

YouTube and covered by a local television outlet on June 1, 2025. (*Id.* ¶ 31–33, Am. Compl. Attach.)[1] On June 16, Jadrnicek emailed the Executive Director of the Virginia Farmers Market Association to report his findings concerning LEAP. (Am. Compl. ¶ 32, Attach.) Then, on July 8, 2025, Peek—who is the Southwest District Director of the Virginia Cooperative Extension—sent Jadrnicek a letter terminating his employment ("Termination Letter"). (*Id.* ¶ 34.) In the letter, Peek gave several reasons for Jadrnicek's termination:

> On June 1, 2025, you conducted a Farm Profitability Workshop that was shared publicly via YouTube and covered by a local television outlet. Prior to the event, on March 21, 2025, I provided specific guidelines intended to support a successful and constructive program. Following the workshop, I received concerns from several community partners. Upon review, I concluded that the workshop itself adhered to the guidelines I provided.
>
> However, on June 16, 2025, your direct email response to the Executive Director of the Virginia Farmers Market Association (VAFMA) included critical comments regarding multiple partner organizations and individuals. In your message, you alleged unethical behavior by the Local Environmental Agriculture Project (LEAP), referenced a forced resignation from a leadership role with the Roanoke Foodshed Network (RFN), and suggested improper financial conduct by local producers, specifically naming one LEAP board member and producer. Additionally, you disclosed having been banned from Virginia Association of Biological Farming (VABF) programs, attributing this to your prior criticisms and asserting financial ties between the VABF director and LEAP.
>
> You were previously issued a letter of minor sanction on June 7, 2024, with clear expectations for improvement in professionalism and communication. I provided continued

[1] Jadrnicek attached the letter he received from Peek terminating his employment and explaining the reasons for his termination to his amended complaint. A Rule 12(b)(6) motion to dismiss "'tests the sufficiency of a complaint,' and [a court's] evaluation is thus generally limited to a review of the allegations of the complaint itself." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)). But a court may also consider a document that is explicitly incorporated into the complaint by reference and/or attached to the complaint as an exhibit, such as the termination letter.

> guidance throughout late 2024 and into 2025, including e-mailed instructions to you on November 8, 2024, to cease allegations of business misconduct by LEAP publicly as a representative of Virginia Cooperative Extension. Formal complaints have been submitted to me and to university leaders from LEAP, RFN, VABF, VAFMA, and multiple producers referencing your misconduct. As outlined in your position description, you, as an Extension Agent, are empowered to identify and prioritize issues, challenges, and opportunities within your scope of responsibility. However, this authority does not extend to making public accusations against others regarding alleged misconduct, unethical behavior, or illegal activity.
>
> Your ongoing public criticism of partner organizations and individuals has resulted in reputational harm to Virginia Cooperative Extension, strained key community relationships, and has prompted legal concerns. These actions demonstrate a serious lapse in professional judgment and are inconsistent with the standards expected of your position.

(Am. Compl. Attach.) Jadrnicek alleges that Peek "retaliated against [him] for speaking on a matter of public concern and reporting wrongdoing" and shining light on illegal activities. (*Id.* ¶ 37–38.)

Jadrnicek initially brought suit in this court on January 22, 2026; he filed an amended complaint on June 4, 2026. He asserts two claims against Peek: First Amendment freedom of speech retaliation and wrongful termination in violation of 42 U.S.C. § 1983, in Peek's individual capacity only (Count I), and retaliation in violation of the VFAWPA, Va. Code Ann. §§ 2.2-3009–3014, in Peek's individual and official capacities (Count II). (Am. Compl. ¶¶ 42–57.) On June 18, Peek moved to dismiss Jadrnicek's amended complaint in its entirety and to

strike the damages Jadrnicek seeks. (Mot. Dismiss. [ECF No. 13].) The matter has been fully briefed and is therefore ripe for disposition.[2]

## II. STANDARD OF REVIEW

### A. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). When evaluating the sufficiency of a complaint, the court is obligated to consider the factual allegations asserted in the complaint as well as any exhibits attached thereto. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing Fed. R. Civ. P. 10(c)).

### B. Motion to Strike under Federal Rule of Civil Procedure 12(f)

Rule 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[S]triking a

[2] The court dispenses with oral argument after a thorough review of the relevant pleadings and the parties' written submissions.

portion of a pleading is a drastic remedy," and motions to do so are "generally viewed with disfavor." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quotations omitted). When a motion to strike is made, the moving party bears the burden to show that it is prejudiced by the challenged material. *Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 605 (W.D. Va. 2019); *see also* 5A Charles Alan Wright & Arthur D. Miller, Federal Practice and Procedure § 1382 (3d. ed. 2021). Any doubt about whether the challenged material should be stricken is resolved in favor of the non-moving party. S*turdivant v. Arc of Haywood Cnty., Inc.*, No. 1:18-cv-123, 2018 WL 2138543, at *1 (W.D.N.C. May 9, 2018); Wright & Miller § 1382. "Absent a strong reason for doing so, courts will generally not tamper with pleadings." *McKague v. HSCGP, LLC*, No. 4:22-cv-00018, 2022 WL 3010472, at *2 (W.D. Va. July 29, 2022) (quoting *Nwachukwu v. Karl*, 216 F.R.D. 176, 178 (D.D.C. 2003)).

## III. DISCUSSION

### A. Count I: First Amendment Speech Retaliation Claim

#### 1. Public Employee Speech under the First Amendment

Citing the rule announced by the Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410, 420–22 (2006), that government employees' speech is not entitled to constitutional protection where it owes its existence to his professional responsibilities, Peek argues that Jadrnicek's speech—specifically his reporting of LEAP's purported illegal activities via a video workshop and an email to the Executive Director of the Virginia Farmers Market Association—is not protected by the First Amendment because it was made in his capacity as an Extension Agent. (Br. in Supp. Mot. Dismiss at 6–7 [ECF N. 12].) Peek contends that, as a result, he was entitled

to discipline Jadrnicek for his speech and that his retaliation claim fails as a matter of law. (*Id.* at 7.)

"The First Amendment protects not only the affirmative right to speak, but also the 'right to be free from retaliation by a public official for the exercise of that right.'" *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)). Though a public employee has the right, in certain circumstances, to speak as a private citizen on matters of public concern, the Supreme Court has repeatedly held that public employees may face restraints on speech that would otherwise be unconstitutional as applied to members of the general public. *Id.* (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) & *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 82 (2004)). Courts must therefore balance the interests of the public employees in informing the public about matters of public concern and the government's interest, as an employer, in maintaining an effective workplace. *Durham v. Jones*, 737 F.3d 291, 299 (4th Cir. 2016) (citing *Connick v. Myers*, 461 U.S. 138, 142 (1983)); *Pickering*, 391 U.S. at 568.

To aid lower courts in balancing those competing interests in the context of a First Amendment retaliation claim, the Fourth Circuit laid out a three-step test requiring courts to consider:

> (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's protected speech was a substantial factor in the employee's termination decision.

*McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998). Under *Garcetti*, the first prong can be "divided into two inquiries: whether the speech was made as a citizen or pursuant to the employee's duties, and whether the content of the speech addressed 'a matter of interest to the community' rather than 'complaints over internal office affairs.'" *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017) (first citing *Garcetti*, 547 U.S. at 421, then quoting *Connick*, 461 U.S. at 149). This "threshold inquiry" is "a question of law for the court," *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000), and Peek focuses his motion to dismiss on only one part of the first *McVey* prong.

In *Garcetti*, the Supreme Court instructed lower courts "to engage in a 'practical' inquiry into the employee's 'daily professional activities' to discern whether the speech at issue occurred in the normal course of those ordinary duties." *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 397 (4th Cir. 2015) (quoting *Garcetti*, 547 U.S. at 422). The Court "expressly rejected a focus on 'formal job descriptions'" to prevent employers from creating excessively broad job descriptions to curb employees' speech rights. *Id.* Because "[e]mployees in some cases may receive First Amendment protection for expressions made at work" and "related to the speaker's job," the Court found "'nondispositive' the fact that the employee expressed his views inside his office on an issue related to the employee's job." *Dunn v. Millirons*, 176 F. Supp. 3d 591, 602 (W.D. Va. 2016) (citing *Garcetti*, 547 U.S. at 420–21). More recently, the Supreme Court admonished lower courts for reading *Garcetti* and its employee-speech implications "far too broadly[,]" emphasizing that "[t]he critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014).

Peek argues that the amended complaint "affirmatively alleges" that Jadrnicek's accusatory remarks regarding LEAP during a video workshop and in an email to an outside organization arose directly from his official job duties:

> [Jadrnicek] alleges that he was employed specifically to conduct analyses related to farm profitability, to educate farmers and other stakeholders, and to engage with community organizations in furtherance of Extension programming. Am. Compl. ¶¶ 19, 22–24. The speech giving rise to the adverse employment action consisted of presentations, communications, and public statements derived from this work and were given a platform by the authority of his position and delivered in connection with Extension programs, workshops, meetings, and relationships formed because of his employment. Am. Compl. ¶¶ 23–33.

(Br. in Supp. Mot. Dismiss at 7.) Ultimately, Peek contends that "the speech was generated through tasks [Jadrnicek] was hired to perform and disseminated through professional channels connected to the role." (*Id.*) Jadrnicek, in turn, argues that he "had no job duty nor requirement to post a YouTube video" detailing alleged illegal acts committed by a partner organization to his employer. (Pl. Br. in Opp. at 4 [ECF No. 16].) At this stage, Jadrnicek has the better argument.

As Peek noted, Jadrnicek's official job duties, as alleged in his amended complaint, included conducting analyses of profitability of southwest Virginia's farmers markets and community-supported agriculture[,]" leading farm profitability workshops for the local community, and supporting local farmers and agricultural organizations. (Am. Compl. ¶¶ 23–24, 33, Attach.) Though the speech at issue occurred while he was performing work duties—conducting a farm profitability workshop and emailing a local farmer market organization—the speech *itself* was not a part of his official duties. The Fourth Circuit has held that disclosing an internal report to news media, sending a letter to the state's attorney and governor regarding

an internal report, and sharing concerns about agency leadership to the state's attorney general and governor, do not arise out of public employees' official job duties. *Andrew v. Clark*, 561 F.3d 261, 273 (4th Cir. 2009) (Wilkinson, J., concurring); *Durham*, 737 F.3d at 294; *Hunter*, 789 F.3d at 399. Similarly, nothing here suggests that Jadrnicek's "daily professional activities" included reporting on allegedly illegal activities uncovered while conducting farm profitability analyses or educating and engaging with farmers and community members. Moreover, Peek has essentially admitted that Jadrnicek's speech was not a part of his official job duties because he was not authorized to make reports about alleged illegal activities in his communications with the public or local organizations. In the Termination Letter, Peek explained to Jadrnicek, "As outlined in your position description, you, as an Extension Agent, are empowered to identify and prioritize issues, challenges, and opportunities within your scope of responsibility. However, this authority *does not extend* to making public accusations against others regarding alleged misconduct, unethical behavior, or illegal activity." (Am Compl. Attach. (emphasis added).) Accordingly, Jadrnicek has sufficiently alleged that he was speaking as a citizen when he reported LEAP's allegedly illegal activities and that his speech is protected by the First Amendment.

As to the remainder of the *McVey* test, the court notes that whether the speech at issue "addresses a matter of public concern must be determined by the content, form, and context of a given statement, *as revealed by the whole record*." *Connick*, 461 U.S. at 147–48 (emphasis added). As a result, resolution of that inquiry "will depend upon the results of discovery as tested by a motion for summary judgment." *Andrew*, 561 F.3d at 268. The second and third prongs of the *McVey* test must also be determined at the summary judgment stage because the *Pickering*

balancing test (represented by the second *McVey* factor) "demands a 'particularized' inquiry into the facts of a specific case," and the third *McVey* prong similarly demands more factual development. *Crouse*, 848 F.3d at 583; *Ridpath*, 447 F.3d at 318 (stating that the second *McVey* factor requires more factual development and must be assessed at the summary judgment stage). Nonetheless, the court will analyze the sufficiency of Jadrnicek's allegations as to the remainder of the *McVey* factors to determine whether he stated a First Amendment retaliation claim. *See McPhail v. Roanoke Cnty. Sch. Bd.*, No. 7:25-cv-242, 2026 WL 174478, at *10–12 (W.D. Va. Jan. 22, 2026) (evaluating, at the motion-to-dismiss stage, whether the plaintiff's complaint contained sufficient allegations for all the *McVey* factors).

First, "[s]peech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Love-Lane v. Martin*, 355 F.3d 766, 776 (4th Cir. 2004). In considering the speech's content, form, and context, *Connick*, 461 U.S. At 147–48, courts must focus on "whether the 'public' or the 'community' is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a 'private' matter between employer and employee," *McPhail*, 2026 WL 174478, at *10 (quoting *Berger v. Battaglia*, 779 F.2d 992, 999 (4th Cir. 1985)). Here, Jadrnicek explained that he reported his discovery that LEAP was engaged in various acts of fraud, including misrepresenting the products it was selling to the community, abusing its nonprofit status, and embezzling taxpayer money. (Am. Compl. ¶¶ 27–29.) He also explained that one of the conduits through which he made that speech was in a workshop "attended by members of the community and in a video posted on YouTube." (*Id.* ¶ 33.) Drawing all inferences in favor of

Jadrnicek, those allegations implicate a matter of public concern—namely, that a local business dedicated to healthy food accessibility[3] may be defrauding its customers and taxpayers.

Second, in applying the second *McVey* prong (the *Pickering* balancing), courts "'must take into account the context of the employee's speech' and the extent to which it disrupts the operation and mission' of the institution." *Ridpath*, 447 F.3d at 317 (quoting *McVey*, 157 F.3d at 278). Jadrnicek alleges that his speech "did not impede or conflict with the performance of his job duties[,]" nor did it "interfere with the operation of or undermine the mission of Defendant." (Am. Compl. ¶¶ 45–46.) These allegations are bolstered by the Termination Letter, where Peek himself explained that, although he received concerns from community partners regarding his speech at the workshop, he "concluded that the workshop itself adhered to the guidelines [he] provided." (*Id.* Attach.) Therefore, Jadrnicek sufficiently established that, at the very least, his interest in speaking at the workshop outweighed any detrimental effect on his employer. Finally, as to the third *McVey* factor, Jadrnicek's allegations that he was fired on July 8—around five weeks after the June 1 workshop and three weeks after his June 16 email—as well as the Termination Letter's explanation that the reason behind his termination was his "ongoing public criticism of partner organizations and individuals" more than suffice to show a causal relationship between the protected expression and his termination. (*See* Am. Compl. ¶¶ 32, 35, Attach.); *see also McPhail*, 2026 WL 174478, at *12. Therefore, at this stage, the facts as alleged state a claim for retaliation in violation of the First Amendment.

[3] The court takes judicial notice of LEAP's website explaining that the organization "create[s] food and farming systems that prioritize health and abundance by supporting local community initiatives, markets, farms, and farmers." *About*, Local Environmental Agriculture Project, https://www.leapforlocalfood.org/about (last visited Aug. 11, 2026).

**2. Qualified Immunity**

Peek argues that, even if Jadrnicek's speech is protected by the First Amendment, qualified immunity independently bars his claim. (Br. in Supp. Mot. Dismiss at 7–9.) Qualified immunity is an affirmative defense that "shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Doe v. Univ. of N.C. Sys.*, 133 F.4th 305, 315 (4th Cir. 2025) (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006)). The test for whether an official is entitled to qualified immunity is well-settled; courts "must consider whether (1) the facts 'make out a violation of a constitutional right' and (2) whether that right was 'clearly established at the time of the defendant's alleged misconduct.'" *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Courts have discretion to address the prongs in either order. *Univ. of N.C. Sys.*, 133 F.4th at 316.

To determine if a right was clearly established, "a court must pinpoint the precise constitutional right at issue." *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022). "In doing so, a court must be careful to not define the right 'at a high level of generality because the dispositive question is whether the violative nature of particular conduct is clearly established.'" *Id.* (quoting *Halcomb v. Ravenell*, 992 F.3d 316, 320 (4th Cir. 2021) (cleaned up)). But "[t]here is no requirement that the 'very action in question [must have] previously been held unlawful' for a reasonable official to have notice that his conduct violated that right." *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739

(2002)). "In other words, 'the nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent the denial of qualified immunity.'" *Hunter*, 789 F.3d at 401 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999)). In the Fourth Circuit, "decisions of the Supreme Court, the Fourth Circuit, and the highest court of the state in which the conduct occurred" are the only sources of law that can create a clearly established right. *Doe v. Rector of George Mason Univ.*, 132 F. Supp. 3d 712, 725 (E.D. Va. 2015) (*citing Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 176 (4th Cir. 2010)). "When there are no relevant decisions from these courts of controlling authority, the Fourth Circuit will consider 'a consensus of cases of persuasive authority' from other jurisdictions, if such exists." *Id.* (quoting *Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004).

As to the first prong—whether the facts as alleged in Jadrnicek's amended complaint make out a constitutional violation—the court explained above that Jadrnicek has plausibly stated a retaliation claim, "and thus, that claim survives the first step of the qualified immunity test." *See Flanagan v. Pittsylvania County, Va.*, No. 7:19-cv-413, 2020 WL 2754754, at *6 (W.D. Va. May 27, 2020) (citing *Ridpath*, 447 F.3d at 320).

The final qualified-immunity hurdle is whether the right that Peek violated was clearly established at the time of Jadrnicek's termination. Peek urges the court to frame the applicable right as "a constitutional right for an Extension Agent to defy direct supervisory directives and launch public, damaging accusations against external community partners." (Br. in Supp. Mot. Dismiss at 8.) This framing would require the court to find a case with the exact facts as this one to conclude that the right is clearly established and is therefore far too narrow. *See Hunter*, 789 F.3d at 401 ("To ring the 'clearly established' bell, there need not exist a case on all fours

with the facts at hand."). In the context of First Amendment retaliation claims where the plaintiff is a public employee, the Fourth Circuit has framed the applicable right as "that of a public employee to speak on matters of public concern" and held that it is clearly established. *Adams*, 640 F.3d at 566; *see also Ridpath*, 447 F.3d at 320 ("[A] long line of decisions, both the Supreme Court's and our own, established that a public employee cannot be fired solely for making protected statements."); *Dunn*, 176 F. Supp. 3d at 606.

Finally, as to the question of whether a reasonable official would have known that terminating Jadrnicek for his speech violated his rights, other courts in this district and circuit have held that, at the 12(b)(6) stage, further factual development is necessary to provide additional context for the defendant's decision to terminate or demote the plaintiff. *See McPhail*, 2026 WL 174478, at *12; *Lanham v. Town of Louisburg, N.C.*, No. 5:25-cv-446, 2026 WL 581201, at *4 (E.D.N.C. Mar. 2, 2026) ("[T]he Court will defer deciding the question of qualified immunity until a later stage in the case."); *McVey*, 157 F.3d at 278–79 (affirming district court's decision to defer ruling on qualified immunity until "record is better developed."). So too, here, a more fulsome factual record is necessary to determine whether a reasonable official in Peek's position should have known that terminating Jadrnicek for his public reporting on a partner organization's purported illegal activities violated his First Amendment rights. Taking the allegations as true and drawing all inferences in Jadrnicek's favor, his complaint alleges enough to cross the hurdle at this stage.

### B. Count II: Virginia Fraud and Abuse Whistle Blower Protection Act Claim

Next, Peek argues that Jadrnicek fails to state a VFAWPA claim because he did not plausibly allege that he reported abuse or wrongdoing as defined by the statute. (Br. in Supp.

Mot. Dismiss at 9.) The VFAWPA "provides that it is the 'policy of the Commonwealth that . . . employees of governmental agencies be freely able to report instances of wrongdoing or abuse committed by governmental agencies or independent contractors of governmental agencies.'" *Wood v. Bristol Va. Util. Auth.*, 661 F. Supp. 3d 538, 551 (W.D. Va. 2023) (quoting Va. Code Ann. § 2.2-3009)). Specifically, "[n]o employer may discharge, threaten, or otherwise discriminate or retaliate against a whistle blower whether acting on his own or through a person acting on his behalf or under his direction." Va. Code Ann. § 2.2-3011(A). The VFAWPA further provides that "'[e]mployer' means a person supervising one or more employees, including the employee filing a good[-]faith report, a superior of that supervisor, or an agent of the governmental agency[;]" that "'[e]mployee' means any person who is regularly employed full time on either a salaried or wage basis . . . by a governmental agency[;]" and that "'[w]histle blower means an employee who witnesses or has evidence of wrongdoing and who makes . . . a good[-]faith report of . . . the wrongdoing or abuse to one of the employee's superiors[.]" *Id.* § 2.2-3010. Peek does not contest, under the facts alleged in the amended complaint, that he is an employer and Jadrnicek is an employee and a whistle blower under the statute's definitions. (*See* Br. in Supp. Mot. Dismiss at 10.)

Peek notes that the statutory definition of "abuse" largely involves financial misfeasance on the part of the employer, and argues that, as a result, Jadrnicek cannot establish that he reported "abuse" under the statute where his allegations "focus exclusively on the purported external actions of a third-party nonprofit entity, rather than any internal governmental financial misfeasance by his public employer." (*Id.*) The court agrees with Peek on this point.

The definitions section of VFAWPA provides that "'abuse' means an *employer's or employee's* conduct or omissions that result in substantial misuse, destruction, waste, or loss of funds or resources belonging to or derived from federal, state, or local government sources." Va. Code Ann. § 2.2-3010 (emphasis added). The statute's plain language, then, requires the alleged abuse to be on the part of the whistle blower's employer or fellow employee. *See Taylor v. Commonwealth*, 837 S.E.2d 674, 676 (Va. 2020) ("When the language of a statute is unambiguous, we are bound by its plain meaning." (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 639 S.E.2d 174, 178 (Va. 2007))); *Hall v. McCoy*, 89 F. Supp. 2d 742, 745 (W.D. Va. 2000) ("[I]f the plain meaning is unambiguous, the court's task is finished and the statute must be applied according to its plain meaning.").

The allegations in Jadrnicek's amended complaint regarding abuse focus almost entirely on LEAP's financial misfeasance—namely, that LEAP was selling products from "food aggregators and food hubs" rather than the "farm shares" it advertised, that a LEAP board member was paying himself using taxpayer funds, and that LEAP was operating as a for-profit enterprise despite its organization as a nonprofit. (*See* Am. Compl. ¶¶ 27–29.) But LEAP is not Jadrnicek's employer (*i.e.* his superior or an agent of Virginia Tech), nor is it a fellow employee. And to the extent that Jadrnicek argues that his reports included abuse perpetrated by Virginia Tech or Peek (*see* Pl. Br. in Opp. at 7), his sole allegation to that effect is that LEAP not selling "farm shares" "resulted in false advertising by LEAP and Virginia Tech." (Am. Compl. ¶ 27.) He does not elaborate how Virginia Tech was involved in that false advertising nor how it otherwise misused or wasted public funds in furtherance of LEAP's purported

scheme. Jadrnicek therefore did not sufficiently allege that he reported abuse by his employer or a fellow employee.

Peek also contends that Jadrnicek failed to allege that he reported a wrongdoing because a "wrongdoing is a serious violation of the law by the employer which is not alleged in this case." (Br. in Supp. Mot. Dismiss at 11.) In other words, Peek argues that Jadrnicek's claim is "fundamentally defective because the explicit target of his reporting is LEAP[,]" which he described as "a completely separate, independent third-party nonprofit entity[.]" (*Id.*) Finally, Peek asserts that the VFAWPA's core focus, through its plain language, is on employer misconduct, and the statute should not be expanded to include investigations into private third parties. (*Id.*) Jadrnicek, in turn, argues that VFAWPA, in its definition of "wrongdoing," does not contain a limitation that he must have reported wrongdoing by his employer. (Pl. Br. in Opp. at 7.) The court agrees with Jadrnicek on this point.

First, the court notes that in the Termination Letter, Peek describes LEAP as a "partner organization" to the Virginia Cooperative Extension. (Am. Compl. Attach.) This suggests a close association between the two organizations. There is a dearth of authority regarding whether reports of wrongdoing by a public employer's "partner organization" is protected under the VFAWPA. But a plain reading of the statutory language does not expressly exclude such reports from VFAWPA's protection. While the VFAWPA explicitly defines "abuse" as an employer's or employee's conduct, it does not similarly require "wrongdoing" to pertain to an employer or employee. *See* Va. Code Ann. § 2.2-3010 (stating that "[w]rongdoing means a violation, which is not of a merely technical or minimal nature, of a federal or state law or regulation[.]"). "Virginia courts recognize that when one part of a statute includes language

absent from another part of the same statute, the omission is meaningful and intentional." *AMF Bowling Ctrs., Inc. v. Tanase*, No. 3:23-cv-448, 2024 WL 5081964, at *3 (E.D. Va. Dec. 11, 2024); *see also Halifax Corp. v. First Union Nat'l Bank*, 546 S.E.2d 696, 702 (Va. 2001).

VFAWPA's policy statement lends support to this reading. It is the policy in Virginia that its citizens and "employees of governmental agencies be freely able to report instances of wrongdoing or abuse committed by governmental agencies or independent contractors of governmental agencies." Va. Code Ann. § 2.2-3009. Reading VFAWPA's policy statement—which includes accusations against independent contractors in its protections—and its definition of "wrongdoing" together, the court cannot conclude, particularly at this preliminary stage, that VFAWPA only protects reports against an employer or employee. *See Yates v. Volunteer Health Care Sys., Inc.*, 783 F. Supp. 1002, 1005 (W.D. Va. 1992) (noting that when using a policy statement as an interpretive aid, it must be read in conjunction with the statute's individual clauses). Though neither Jadrnicek nor the Termination Letter provide details on the relationship between Virginia Tech and LEAP, the court makes the reasonable inference that the Virginia Cooperative Extension works with LEAP on projects or provides funding. *See Auckland v. Gilead Sciences, Inc.*, No. 7:24-cv-00501, 2025 WL 314029, at *1 (W.D. Va. Jan. 28, 2025) ("All reasonable inferences are drawn in favor of the plaintiff.") In addition to labeling LEAP a "partner organization," Peek explained in the Termination Letter explained that Jadrnicek's criticism of LEAP "resulted in reputational harm to Virginia Cooperative Extension," signifying a degree of interrelation (rather than LEAP being a mere "unrelated third party," as Peek argues). If the General Assembly intended to protect reports of misconduct by independent contractors of government agencies, it is not beyond the pale that

it intended to reach reports against organizations with otherwise close relationships with a government agency.

Finally, Peek argues that, in any case, Jadrnicek's allegations of wrongdoing on LEAP's part are "conclusory assertions that certain conduct was fraudulent, illegal, or constituted self-dealing[,]" and "[s]uch labels and conclusions are insufficient to state a plausible claim for relief." (Reply Br. at 2–3.) The court does not agree that Jadrnicek's allegations are merely conclusory. He alleges that (1) LEAP engaged in fraud and unjust enrichment by not selling "farm shares" despite advertising that it does; (2) a LEAP board member illegally paid himself in taxpayer funds; and (3) LEAP operated as a for-profit business despite its organization as a non-profit, competing with for-profit grocery stores and farms while avoiding taxation by funneling revenue to its board members. (Am. Compl. ¶¶ 27–29.) Jadrnicek also alleges that he "reported in good faith that LEAP and individuals associated with LEAP had engaged in illegal activity" after his investigation led him to uncover that illegal activity. (*Id.* ¶ 30.)

At this stage, Jadrnicek sufficiently alleged that he reported "wrongdoing"—that is, a violation of a federal or state law—in good faith and with a reasonable belief that the information was accurate. *See* Va. Code Ann. §§ 2.2-3010, 2.2-3011(C). Here, the court may infer from the facts alleged that, *if true*, LEAP and its agents may have violated federal or state law by engaging in fraud and embezzlement. *Contrast Wood v. Bristol Va. Util. Auth.*, 661 F. Supp. 3d 538, 550 (W.D. Va. 2023) ("A plaintiff is not required to show that the underlying report of unlawfulness was in fact meritorious to prevail. If Wood subjectively and reasonably believed that his employer was engaged in unlawful practices by encouraging employees infected with COVID to report to work and to remain at the worksite when he reported the

matter to the safety manager and to OSHA, then he establishes a plausible case at this juncture and survives the motion to dismiss.") (internal citations omitted),[4] *with Supinger v. Virginia*, 167 F. Supp. 3d 795, 819–20 (W.D. Va. 2016) (holding that the plaintiff's allegations that he reported an employee's behavior—without explaining how the behavior constituted wrongdoing or abuse—were insufficient), *and Redwine v. Rector & Visitors of Univ. of Va.*, No. 3:25-cv-00017, 2025 WL 3296298, at *5 (W.D. Va. Nov. 26, 2025) (holding that the plaintiff's allegation that he reported "ADA, FMLA, and policy violations" was too vague).

Although Jadrnicek has stated a VFAWPA claim at this stage, Peek can only be sued under this statute in his *official capacity*. *See Brown v. Copeland*, No. 6:26-cv-00016, 2026 WL 1396219, at *2–3 (W.D. Va. May 19, 2026) (holding that the text and structure of VFAWPA suggest that supervisors cannot be sued in their individual capacities because the statutory remedies "are only available against a defendant in his official capacity—not his individual capacity"); *Young v. Rector & Visitors of the Univ. of Va.*, No. 3:25-cv-00083, 2026 WL 1557470, at *6 (W.D. Va. June 2, 2026) ("VFAWPA claims can only be pleaded against supervisors in their official capacities[.]") Therefore, Jadrnicek's individual-capacity VFAWPA claim must be dismissed, and his official-capacity claim can proceed.

---

[4] In *Wood*, the court was analyzing a claim brought under the Virginia Whistleblower Statute, Virginia Code § 40.1-27.3, which is a more recent law passed in 2020 to expand whistleblower protection to private-sector employees who report their employers. D. Paul Holdsworth, *Employment Law*, 55 U. Rich. L. Rev. 113, 133–34 (2020) (noting that prior to the statute's enactment, "there was virtually no employment protection for whistleblowers in the private sector."). Both the Virginia Whistleblower Statute and the VFAWPA prohibits an employer from retaliating against an employee for his good-faith report of a violation of federal or state law. *See* Va. Code Ann. § 40.1-27.3(A)(1). Therefore, the court finds that the *Wood* court's discussion of the sufficiency of the plaintiff's allegations of his employer's wrongdoing is applicable here.

**C. Damages**

Finally, Peek argues that Jadrnicek's requested remedies either exceed those enumerated by the VFAWPA or that they are otherwise unavailable, and that the court should either dismiss the case for lack of standing or redressability or, in the alternative, strike the damages that are unavailable as a matter of law. (Br. in Supp. Mot. Dismiss at 11–15.)

At the threshold, because both Jadrnicek's individual-capacity § 1983 and official-capacity VFAWPA claims survive, the court will not strike damages that are permitted by either statute. "It is well settled that a state official may be sued for money damages in his individual capacity under § 1983." *Fulton v. Nisbet*, No. 2:15-4355-RMG, 2017 WL 5054707, at *2 (D.S.C. Nov. 1, 2017) (citing *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991)). Both compensatory and punitive damages are available under § 1983. *Canter v. Maryland*, No. JKB-19-2395, 2025 WL 1677406, at *3 (D. Md. June 13, 2025) ("[O]ut-of-pocket loss and other monetary harms and impairment of reputation, personal humiliation, and mental anguish and suffering [can] be awarded." (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1246 (4th Cir. 1996))); *Simmons v. Corizon Health, Inc.*, 122 F. Supp. 3d 255, 264 (M.D.N.C. 2015) (citing *Smith v. Wade*, 461 U.S. 30, 35 (1983)). Additionally, although § 1983 does not provide a statutory right to a jury trial, a § 1983 suit seeking legal (monetary) relief "is an action at law within the meaning of the Seventh Amendment[,]" and therefore a plaintiff in such a suit is entitled to a jury trial. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999); *Perttu v. Richards*, 605 U.S. 460, 467 (2025).

The VFAWPA provides for the following remedies for a prevailing plaintiff: "(i) reinstatement to the same position or, if the position is filled, to an equivalent position; (ii)

back pay; (iii) full reinstatement of fringe benefits and seniority rights; or (iv) any combination of these remedies[,]" as well as reasonable attorney fees and costs. Va. Code Ann. § 2.2-3011(D). The statute also provides that the court may impose a civil penalty on the employer of not less than $500 nor more than $2,500 to be paid into the Fraud and Abuse Whistle Blower Reward Fund, (*id.*) under which the plaintiff can file a claim for reward in some circumstances, *id.* § 2.2-3012.

In his amended complaint, Jadrnicek requests a jury trial and the following remedies: "injunctive relief, equitable relief, reinstatement, back pay, front pay, full reinstatement of fringe benefits and seniority rights, compensatory damages, punitive damages, and actual damages, all together with prejudgment and post judgment interest and attorneys' fees and costs[.]" (Am. Compl. at 10.) As noted above, reinstatement, back pay, and attorney fees are permissible remedies under the VFAWPA,[5] and compensatory damages and punitive damages are recoverable under § 1983. The term "actual damages" is synonymous with "compensatory damages." *See Benjamin v. Shaw*, No. 4:15-cv-05110, 2017 WL 3205798, at *7 (D.S.C. July 28,

[5] Peek argues that "all claims for monetary damages or statutory penalties against [him] for both claims in his official capacity are completely barred by sovereign immunity under the Eleventh Amendment[.]" (Br. in Supp. Mot. Dismiss at 11–12.) He also argues that "reinstatement and back pay cannot be ordered against individual supervisors." (*Id.* at 13.) Peek is incorrect on both fronts. First, by creating a private right of action by a public employee against his supervisor, the VFAWPA "expressly waives the supervisor's sovereign immunity for such claims." *Martin v. City of Waynesboro*, 926 S.E.2d 516, 524–25 (Va. Ct. App. 2026). Second, it is well-established that supervisors can be sued in their official capacities. *See Brown*, 2026 WL 1396219, at *2–3.

Under Peek's rationale, it is unclear when a plaintiff under VFAWPA would ever be able to get reinstatement and back pay as a remedy, considering that the actual government agency is not subject to suit under the VFAWPA. *See Morrison v. George Mason Univ.*, No. CL-2021-7808, 2024 WL 5454676, at *3–4 (Va. Cir. Feb. 6, 2024). Moreover, because official-capacity suits are against the state official's office—which essentially serves as a stand-in for the state agency—Peek's argument that he cannot *personally* reinstate Jadrnicek or provide him pack pay is inapposite. *See Patterson v. Hawse*, No. 1:15-cv-477, 2015 WL 4092764, at *3 (E.D. Va. July 6, 2015) ("[A]n official-capacity suit is . . . to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985))).

2017) ("The purpose of actual or compensatory damages is to compensate a party for injuries suffered or losses sustained." (cleaned up)).

The court, however, will strike Jadrnicek's requests for front pay, injunctive relief, and equitable relief. In the Fourth Circuit, "front pay is considered an equitable remedy." *Calef v. Fedex Ground Package Sys., Inc.*, No. 1:06-cv-47, 2007 WL 2570185, at *7 (N.D.W. Va. Aug. 31, 2007) (citing *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 307 (4th Cir. 1998)). Injunctive relief is also a form of equitable remedy. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 331 (4th Cir. 2006). Because § 1983 individual-capacity claims do not allow for equitable remedies and the VFAWPA enumerates specific equitable remedies, any other types of equitable relief beyond those recoverable in the VFAWPA—such as front pay—are unavailable as a matter of law. And because Jadrnicek lists all available equitable remedies under the VFAWPA in the *ad damnum* clause of his amended complaint, his general request for injunctive and equitable relief is duplicative and will therefore be struck. *See Eli Rsch., Inc. v. United Commc'ns Grp, LLC*, 312 F. Supp. 2d 748, 756 (M.D.N.C. 2004). Accordingly, the court will grant Peek's motion to strike in part.

## IV. CONCLUSION

For the reasons discussed above, Peek's motion to dismiss is denied as to Count I in its entirety and Count II in Peek's official capacity, and granted as to Count II in Peek's individual capacity. Peek's motion to strike is granted only as to Jadrnicek's request for front pay, equitable relief, and injunctive relief.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 17th day of August, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE